20 East 74th Street, Inc., Respondent, *v.* Esther Minskoff, as Executrix of Sam Minskoff, Deceased, et al., Appellants.

Argued January 13, 1955; decided April 14, 1955.

*Stephen S. Bernstein, William Jay Lippman* and *Alvin J. Burnett* for appellants. I. The proof was conclusive that the building had been completed in accordance with the contract, the terms of which were clear and unambiguous. (*Hartigan* v. *Casualty Co. of Amer.*, 227 N. Y. 175; *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125; *Raleigh Associates* v. *Henry*, 302 N. Y. 467; *Heller & Henretig* v. *3620–168th* St., 302 N. Y. 326; *General Phoenix Corp.* v. *Cabot*, 300 N. Y. 87; *Friedman* v. *Handelman*, 300 N. Y. 188; *Brandt* v. *Morning Journal Assn.*, 81 App. Div. 183, 177 N. Y. 544; *Bedcro Realty Corp.* v. *Title Guar. & Trust Co.*, 290 N. Y. 520; *Elefante* v. *Pizitz*, 182 App. Div. 819, 230 N. Y. 567; *Larkin Co.* v. *Terminal Warehouse Co.*, 161 App. Div. 262, 221 N. Y. 707; *Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334.) II. The alleged promises made after the closing were void both for lack of consideration and under section 33-c of the Personal Property Law. (*Green* v. *Doniger*, 300 N. Y. 238; *Delancey Kosher Restaurant & Caterers Corp.* v. *Gluckstern*, 305 N. Y. 250; *Gearns* v. *Commercial Cable Co.*, 293 N. Y. 105; *Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.*, 305 N. Y. 36; *Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487; *O'Meara Co.* v. *National Park Bank*, 239 N. Y. 386.) III. The delivery of the general releases constitutes a bar to this suit. (*Kirchner* v. *New Home Sewing Mach. Co.*, 135 N. Y. 182; *Knapp Engraving Co.* v. *Post Constr. Corp.*, 280 App. Div. 763.)

*Aaron Lipper* and *Walter J. Keeley* for respondent. I. The contract provisions relating to completion of the building do not bar respondent from showing the failure of appellants to complete and furnish the building. (*Raleigh Associates* v. *Henry*, 302 N. Y. 467; *Lachs* v. *Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357; *O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50; *Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79; *Gilligan* v. *Tishman Realty & Constr. Co.*, 283 App. Div. 157, 306 N. Y. 974.) II. The agreements alleged in paragraph "Seventh" of the complaint do not violate section 33-c of the Personal Property Law. The agreements reaffirm what appel-

lants were originally supposed to do, namely, provide a complete and well-finished building in accordance with the plan of organization. The written agreement was not changed, modified or discharged. III. The delivery of the general releases does not constitute a bar to this suit. (*Rosenfeld* v. *Fairchild Engine & Airplane Corp.,* 201 Misc. 616; *Hettich* v. *Hettich,* 304 N. Y. 8.)

VAN VOORHIS, J. This action is brought by the corporate owner of a co-operative apartment house against its former stockholders (the promoters and developers of the co-operative) to recover damages for failure to complete the building according to contract. Any recovery in the action will inure to the benefit of the individual purchasers of co-operative apartments, who constitute holders of 95% of the corporation's stock. The remaining 5% is still owned by defendants or some of them. The contract under which the action is brought is the one under which the co-operative was formed and by which the rights and liabilities regarding the project were established between plaintiff, defendants and the apartment owners. The plan was formulated and 95% of the shares in plaintiff were sold to purchasers of apartments while the building was under construction. Inasmuch as the building had not been finished, the contract contained a clause (par. 8) whereby defendants agreed (upon conditions) to cause the apartment corporation to proceed with the completion and equipment of the building. The co-operative plan was not to take effect until completion of the building, and, in event that it were not completed, then the million dollars, which was the approximate amount subscribed in the aggregate by the ninety-four purchasers under the plan who are now plaintiff's stockholders, was to be returned to them by defendants' agent (Brown, Wheelock, Harris, Stevens, Inc.) to whom they paid it in escrow when they signed the agreement. This agreement provided that its provisions should bind, apply to and inure to the benefit of plaintiff corporation, holding title to the co-operative, to the extent that its provisions were applicable. Plaintiff's complaint alleges that the building has not been completed according to contract. Defendants deny this, and allege that it has been completed within the obligation of the contract. The appeal is from an order of the Appellate Division, First Department, which denied defendants' motion for summary judgment dismissing the complaint, holding that there is a triable issue.

Ordinarily, there would be a triable issue where there are conflicting affidavits under which it might be contended that a building has or has not been completed. There would be a triable issue here except for the circumstance mentioned in the second question certified by the Appellate Division, viz.: "May defendants be held liable for failure to complete the building despite the occurrence of the three events specified in paragraph ' 9 ' of the Sellers' Agreement, which provides that upon such occurrence the building shall be deemed completed?"

Except for the circumstance mentioned in this certified question by the Appellate Division, the question at issue would center upon whether this building had been completed in accordance with the " plans and the general description ", as they are called in the agreement. The parties were not obliged, however, to include in their contract an obligation by defendants to complete the building in that manner; it did contain a covenant upon that subject, but one which was qualified by a clause in the eighth paragraph permitting deviations from the plans and general description of the building " without further notice to the Purchasers " if such deviations were approved by the supervising architect for the building loan lender and the permanent mortgagee; the covenant to complete the building was also qualified by the ninth paragraph, which states that the building is to be deemed completed, for the purposes of the contract, as soon as the final certificate of occupancy has been issued by the department of housing and buildings of the City of New York, the final payment on the building loan mortgage made, and the mortgage assigned to the Mutual Benefit Life Insurance Company for permanent financing. The ninth paragraph states that " When the three events above mentioned have occurred, the same shall be deemed and considered by all parties hereto as conclusive proof that the building has been fully completed in accordance with the provisions of this agreement ".

There is no suggestion that any of these events occurred through collusion, or in consequence of any kind of fraud or mistake. On the contrary, these events depend upon the performance of acts by third parties dealing at arm's length, and (except for the department of housing and buildings) having an interest adverse to defendants and almost identical with that of the apartment owners. This clause in the agreement appears

to have been prompted by a desire to avoid a multiplicity of controversies with the purchasers of apartments concerning whether the building had been, in fact, completed. In order to furnish an objective test, the contracting parties selected three events whose occurrence would involve a high degree of probability that the building had been finished according to the plans and general description.

The first of these events signifying completion was the issuance of a certificate of occupancy, which under the Administrative Code of the City of New York can be granted by the department of housing and buildings only upon an affidavit '' of a licensed architect, licensed professional engineer or superintendent of construction who supervised the construction '' which '' shall state that the deponent has examined the approved plans of the structure for which a certificate of occupancy is sought, and that to the best of his knowledge and belief the structure has been erected in accordance with the approved plans, and as erected complies with the laws governing building construction, except in so far as variations therefrom have been legally authorized. Such variations shall be specified in the affidavit.'' (§ C26–187.0.) These facts have to be verified by the department of housing and buildings. A certificate of occupancy, when issued, must certify '' that such a structure conforms substantially to the approved plans and specifications and the requirements of the laws governing building construction applicable to structures of the class and kind of such structure.'' (§ C26–181.0.) The certificate of occupancy for this building, which was issued in 1947, contains this statement required by the Administrative Code.

The final payment on the building loan would not be made until the architect or engineer for the lending institution was satisfied that the building had been completed, and the permanent mortgagee, the Mutual Benefit Life Insurance Company, to which the permanent first mortgage was to be assigned, could normally be relied upon to insist that it obtain a completed apartment building as collateral to its loan.

The purchasers of co-operative apartments were informed by defendants' written prospectus that '' For all the purposes of the plan, the apartment building shall be deemed completed as soon as all of the following three conditions are met '', after

which these three events described in the ninth paragraph of the contract are specifically enumerated.

Paragraph ninth in the contract even stated that "The conclusiveness of the presumption that the building has been fully completed * * * shall not be affected by the fact that as a condition of receiving the final payment on the building and permanent first mortgage loan the Apartment Corporation or the Sellers, with or without security or guarantees, may have agreed with the mortgagee to do or perform additional work after the receipt of such final payment; in the event, however, of such agreement, the Sellers, jointly and severally, agree to perform or cause to be performed the terms and conditions of the agreement so made with the mortgagee in respect to any such additional work." Some additional work was required to be performed by the Mutual Benefit Life Insurance Company before it accepted an assignment of the building loan mortgage, but the work thus required was done to its satisfaction as shown by a letter written to plaintiff's president: "We have inspected the property and find that the building is now fully completed." In the absence of fraud or mistake, of which there is no evidence, this co-operative apartment house is conclusively presumed to have been completed by agreement of the parties upon the happening of these events.* (*Wyckoff* v. *Meyers*, 44 N. Y. 143.)

---

* Paragraph 8 and the relevant portions of paragraph 9 of the contract read as follows:

"8. The Sellers undertake and agree that they will cause the Apartment Corporation to proceed with the completion and equipment of the building substantially in accordance with the plans as prepared by Sylvan Bien and approved by the Department of Housing and Buildings and with the general description set forth in Schedule A annexed to the plan provided, however, that from time to time changes in the plans and the general description of the building as set forth in Schedule A annexed to the plan including substitution of materials and equipment, deemed necessary by the Sellers and approved or accepted by Clarence C. Merritt, supervising architect for the Central Hanover Bank and Trust Co. and The Mutual Benefit Life Insurance Company, or his successor, may be made by the Sellers without further notice to the Purchasers.

"9. For the purposes of this agreement, the apartment building shall be deemed completed as soon as all three of the following conditions are met: (1) the final certificate of occupancy has been issued by the Department of Housing and Buildings of the City of New York; (2) the final payment on the building and permanent first mortgage loan has been made; and (3) said

It is conceded in respondent's brief that the occurrence of these three events made operative the plan for the transfer of the capital stock to the co-operative tenant owners and the payment of the purchase price by the escrow agent to defendants. Nothing contained in the contract limits the effect of the definition of completion of the building to the purpose of making operative the co-operative plan. It applies equally to the obligation to complete the building for the use of the tenant owners. The contract contains no language which would reserve to the apartment owners, or to plaintiff for their benefit, any cause of action based on neglect to complete the building, after the plan had become operative, which was to occur only upon the happening of the contingency that the building had been completed. It would be contrary to the words and to the structure of the agreement to construe it as meaning that it is conclusively presumed that the building has been completed for one purpose but not for the other. The Appellate Division does not appear to have denied defendants' motion for summary judgment upon that theory. It held that the presumption of completion is not confined to putting the co-operative plan into operation, but that it also has the effect of barring insubstantial claims for damages arising from failure to complete the building. This

first mortgage payable substantially as described in the plan, has been assigned to The Mutual Benefit Life Insurance Company and/or is held by that company as a permanent mortgage. Expressions in this agreement such as 'time of completion' or 'date of completion' shall be deemed to mean the earliest date when all three of the foregoing conditions have been met.

"When the three events above mentioned have occurred, the same shall be deemed and considered by all parties hereto as conclusive proof that the building has been fully completed in accordance with the provisions of this agreement and when written proof of the occurrence of said three events has been submitted to the Agent, the Agent is expressly authorized and directed to pay to the Sellers all monies received by it hereunder. The conclusiveness of the presumption that the building has been fully completed in accordance with the provisions of this agreement shall not be affected by the fact that as a condition of receiving the final payment on the building and permanent first mortgage loan the Apartment Corporation or the Sellers, with or without security or guarantees, may have agreed with the mortgagee to do or perform additional work after the receipt of such final payment; in the event, however, of such agreement, the Sellers, jointly and severally, agree to perform or cause to be performed the terms and conditions of the agreement so made with the mortgagee in respect to any such additional work."

presumption was held also to preclude claims for damages arising from failure to complete the building based on " matters about which reasonable men might differ ". The only difficulty with such an interpretation, as we view it, is that the Appellate Division did not go quite far enough. The contract draws no distinction between the conclusiveness of the presumption of completion in giving effect to the co-operative plan and in barring claims for damages. It provides that, when the three events above mentioned have occurred, it shall be deemed by all parties to be " conclusive proof that the building has been fully com pleted in accordance with the provisions of this agreement ". At another place the contract states that " For the purposes of this agreement, the apartment building shall be deemed com pleted as soon as all three of the following conditions are met " The presumption of completion was intended by the parties te be conclusive for all of the purposes of the agreement.

One further point made by respondent remains to be con· sidered, which is that a triable issue is presented by a separate oral agreement alleged in the seventh paragraph of the com· plaint to have been made by defendants " subsequent to the closing of " the co-operative plan and the acquisition of their stock by the co-operative apartment owners. This agreement is asserted to declare that defendants " would do everything necessary to fully and properly complete the building and furnish the necessary equipment in accordance with the intentions of the defendants and Sam Minskoff and their agreement to provide a complete and well furnished building, in accordance with the plan of organization." The chairman of plaintiff's board of directors called this alleged oral agreement " The heart of the plaintiff's complaint " in an affidavit submitted in opposition to defendants' motion for summary judgment. Special Term correctly ruled out this contention, stating that " Such oral promises were without consideration and are not actionable in the absence of a memorandum sufficient to satisfy subdivision 1 of section 33-c of the Personal Property Law." Paragraph 24 of the contract contains the clause contemplated by this section of the Personal Property Law, that " no change or modification of the terms and conditions of this agreement shall be binding upon the Sellers unless the same shall be in writing, signed by Sam Minskoff on behalf of the Sellers." The purpose of insert-

ing this provision in accordance with the statute is clear. If it were possible to eliminate the objective test of completion contained in the contract by proving an oral promise to finish what the contract stated must conclusively be presumed to have been finished, there would have been little purpose in incorporating such a test in the contract. Likewise, no consideration has been shown for a new promise to perform work upon the building. Only certain agreements made in writing are validated without consideration by section 33 of the Personal Property Law. This agreement is alleged to have been made orally. Consideration is necessary to support promises of this nature (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory,* 231 N. Y. 459). The Appellate Division does not appear to have questioned the disposition made of this point by Special Term.

No decision is rendered concerning whether the general releases would be effectual in the absence of the other factors in the case.

The order of the Appellate Division should be reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division. The first question certified is answered in the affirmative, and the second question certified answered in the negative.

CONWAY, Ch. J., DESMOND, DYE, FULD, FROESSEL and BURKE, JJ., concur.

Ordered accordingly.