Chief Judge Fuld.
 

 The plaintiff, Arc Electrical Construction Company, was the electrical subcontractor for the construction of a sugar refinery in Cayuga County. It brought the present action against George A. Fuller Company, an intermediate contractor, alleging that the latter had failed to pay for work performed. After a trial without a jury, the Supreme Court awarded the plaintiff the full amount of its claim and, on appeal, the Appellate Division unanimously affirmed. On this appeal, here by our permission, the defendant seeks reversal on the ground that, under the terms of its contract, the plaintiff was not entitled to be paid since the project architect had not approved the work performed.
 

 The contract—a standard form printed agreement prepared by the defendant Fuller — provided for two different methods of computing the payments due to Arc. The first method,. contained in article XXXI, was intended to apply while the contract was in effect. It provided for regular monthly progress payments constituting 90% of the amount due Arc for work performed during the preceding month, with the remaining 10% to be withheld pending completion of the project. In order to receive these monthly payments, Arc was required to submit a requisition, “ [s]ubject to the approval by the Contractor [Fuller] and the Architect ”. The second method of payment was set forth in article XXXIII; a provision which gave Fuller the right to terminate the contract at any
 
 *102
 
 time prior to completion. Unlike the progress payments under article XXXI — pursuant to which 10% was to be withheld pending completion of the job—Fuller was required, if it terminated the contract prior to completion, to pay Arc the entire amount due it at that time. There is no mention, in article XXXIII, of any requirement for the architect’s approval.
 

 Arc commenced work on the project in March of 1965, and the first eight requisitions submitted, totaling about $1,400,000, received the necessary approval and were paid in due course. In December, 1965, however, the architect failed to approve Arc’s requisition for the preceding month and, even though the work had been approved by Fuller’s own project manager, no payment was made. Following this, four more requisitions were submitted, all of which lacked the signature of the architect’s representative and none of which were paid by Fuller. Meanwhile, on February 18, 1966, Fuller’s representative instructed Arc that it was exercising its option to terminate the contract and told it to cease all further work. The following May, Arc instituted the present suit for the amount due on all work it had performed since November, 1965, plus the 10% reserve that had been withheld from its previous payments.
 

 In awarding judgment to the plaintiff, the trial judge indicated that recovery was not based upon article XXXI, which provided for progress payments of only 90% subject to the approval of the architect, but upon article XXXIII, which contained no such limitations. He rejected the argument that the requirement for the architect’s approval should be read into the provisions of article XXXIII, stating that such a construction of the statute 11 would require the rewriting of Article XXXIII” and that, in any event, the enforcement of such a condition after the contract had terminated would constitute an unenforcible “ forfeiture.” We agree with this conclusion.
 

 Although the provisions for computing payments under articles XXXI and XXXIII are quite separate and distinct, Fuller contends that, at least where payment is being sought for the same work, the requirement for the architect’s approval must, by necessary implication, be applied to both provisions. Otherwise, it is said, Arc would be able to obtain payment under
 
 *103
 
 the termination provision for work which had already been found, to be defective and had been properly rejected. 11 There is nothing to indicate ”, Fuller asserts in its brief, “that the mere passage of time would transform a bad claim into a good one.”
 

 There is considerable difference between the rejection of a claim for a progress payment and the refusal of payment after the contract has been terminated and all work has ceased. When the architect failed to approve Arc’s requisition for a progress payment, this did not mean that its efforts would go permanently uncompensated. Arc was still on the job and could make whatever changes or corrections were necessary to satisfy the architect and qualify for payment. The withholding of approval, though it may have postponed, did not eliminate Arc’s right to compensation for the work it had performed. However, once the contract was terminated, preventing the subcontractor from curing any defects, it is reasonable to construe the contract as providing for payment for all work actually performed, even though it may not have been entirely completed. If there were any deficiencies in performance, they would merely diminish the amount to which Arc would be entitled and would not (and should not) result in the forfeiture of its entire right to be compensated.
 
 [1]
 
 Such a construction of the contract, which adequately protects the interests of both parties, comports best with its language and we see no reason to rewrite article XXXIII of the contract— drafted, as we have noted, by Fuller—to eliminate any obligation to pay for work performed in the absence of approval from the architect.
 

 Indeed, even if a requirement for the architect’s approval was expressly incorporated in article XXXIII, it would not be enforceable. It was Fuller’s own act, in terminating the contract, which rendered it impossible for Arc to take any necessary steps to satisfy the architect. The law looks with disfavor on contractual provisions that would allow one party, by its own unilateral act, to avoid its obligations by preventing or hindering the other party from fulfilling one of the conditions to the contract. (See
 
 International Firearms Co.
 
 v.
 
 Kingston
 
 
 *104
 

 Trust Co.,
 
 6 N Y 2d 406, 410;
 
 O’Neil Supply Co.
 
 v.
 
 Petroleum Heat & Power Co.,
 
 280 N. Y. 50, 56;
 
 Patterson
 
 v.
 
 Meyerhofer,
 
 204 N. Y. 96, 100-101; see, also, Restatement, Contracts, § 295.) “ [T]he defendant cannot rely on [a] condition precedent”, this court wrote in the
 
 O’Neil Supply
 
 case (280 N. Y., at p. 56), 1 ‘ where the non-performance of the condition was caused or consented to by itself ”.
 

 It is also significant that there was no showing in this record of any defects in performance which could have justified the architect’s failure to approve Arc’s requisition. Although such approval, if given, would have been conclusive on the question of satisfactory completion of the work (see
 
 20 East 74th St.
 
 v.
 
 Minskoff,
 
 308 N. Y. 407, 412-415), it is well established that, where work has, in fact, been substantially performed in accordance with the provisions of a contract, the withholding of approval does not bar recovery. (See
 
 Smith Contr. Co.
 
 v.
 
 City of New York,
 
 240 N. Y. 491, 500;
 
 New York & New Haven Automatic Sprinkler Co.
 
 v.
 
 Andrews,
 
 173 N. Y. 25, 30;
 
 Nolan
 
 v.
 
 Whitney,
 
 88 N. Y. 648, 650.)
 
 [2]
 

 The leading case of
 
 Nolan
 
 v.
 
 Whitney
 
 (88 N. Y. 648,
 
 supra)
 
 applied this principle in circumstances not too unlike those in the present case. There, as here, a contractor had brought suit to recover for work performed under a construction contract, and the defendant asserted the failure to obtain the architect’s approval. A trial was held before a referee, who decided that, except for a trivial defect valued at $200, the work had been substantially performed and awarded judgment despite the lack of an architect’s certificate. Our court affirmed the award, stating that, “When [the plaintiff] had substantially
 
 *105
 
 performed Ms contract, the architect was bound to give him the certificate, and his refusal to give it was unreasonable, and it is held that an unreasonable refusal on the part of an arcMtect in such a case to give the certificate dispenses with its necessity ” (p. 650).
 

 In sum, then, .the trial court was entirely correct in applying the contract as it was written, without reading into it a requirement for the approval of the architect after the contract had been terminated. It is undisputed that the work had, in fact, been substantially performed by Arc and the fact that an architect, for some undisclosed reason, had failed to approve the work should not prevent the plaintiff from receiving compensation for its labors.
 

 The order appealed from should be affirmed, with costs.
 

 Judges Burke, Scileppi, Bergan, Keating, Breitbl and Jasen concur.
 

 Order affirmed.
 

 [1]
 

 . In fact, Fuller was unable to show any defects in Arc’s performance and the trial c'ourt awarded the full amount claimed.
 

 [2]
 

 . The rule is based upon the fact that the architect, in contracts of this sort, rarely a disinterested arbiter, is usually the representative of the party, often the owner, who must ultimately bear the cost of the work. In the case before us, the architect was the Vitro Corporation of America, the prime contractor from which Fuller was to receive its compensation. Since approval, when given, constitutes an admission that the work is acceptable, it may be relied upon as a good indication that the contract was, in fact, properly performed. On the other hand, there is no denying that the architect has some incentive to delay approval or even withhold it entirely, and the fact that, in this case, Vitro may have been reluctant to pay Fuller for Arc’s work does not necessarily mean that Arc failed in any way to perform properly under its contract with Fuller.