■ In the Matter of SILICONE BREAST IMPLANT LITIGATION. LISA LYNN CLARK, Respondent, v BRISTOL-MYERS SQUIBB AND COMPANY et al., Appellants, et al., Defendants. [761 NYS2d 640] —Order, Supreme Court, New York County (Helen Freedman, J.), entered September 7, 2001, which denied defendants-appellants' motion to enforce a stipulation of settlement and vacated the stipulation, unanimously reversed, on the law, without costs, the stipulation reinstated, and the motion granted.

Plaintiff brought this action seeking damages for injuries she sustained from her use of polyurethane-foam-covered breast implants. Through counsel, plaintiff opted out of a settlement class created for individuals with breast implants manufactured by various companies, including defendants. In November 1998, mediation was held before a special master, at which time plaintiff's former counsel indicated that plaintiff was not in a position to settle the case. However, on December 18, 1998, plaintiff's former attorneys and the moving defendants informed the court that the parties had agreed to settle the action for $110,000.

In January 1999, plaintiff's former counsel forwarded plaintiff a standard set of closing papers, with a letter asking her to execute the papers and send them back. A stipulation of discontinuance with prejudice was also executed by plaintiff's former counsel's firm (hereinafter the firm). Plaintiff and her former counsel had a number of subsequent telephone conversations regarding, inter alia, the amount of the firm's costs, and a 6% assessment required to be deducted from any settlement agreement to compensate attorneys that had conducted nationwide discovery in favor of breast implant plaintiffs. In September 1999, plaintiff advised the firm that, based upon information she had received about a verdict in another breast

implant case, she wanted to settle her case for $4.2 million. As a result, she refused to sign the general release and settlement agreement. The firm filed a motion to be relieved as counsel, which was granted on consent, inasmuch as plaintiff filed a malpractice action against it in January 2000.

Defendants then moved, by order to show cause dated May 9, 2000, to enforce the parties' settlement agreement. Defendants claimed that the firm's motion to withdraw was their first official notice that plaintiff did not intend to abide by the settlement agreement. Defendants next asserted that it was unreasonable for plaintiff to have waited so long to object to the settlement. They noted that plaintiff's claims were largely unsubstantiated, given that the doctor who removed plaintiff's implants opined that plaintiff would have no residual problems therefrom. Given all of this information, defendants argued that the settlement was reasonable. Finally, defendants claimed that, at the very least, the firm had apparent authority to enter into a binding agreement since plaintiff was aware of, and had been an active participant in the presettlement negotiations.

In opposition, plaintiff's new counsel argued that plaintiff did not, at any time, agree to the settlement or give former counsel reason to believe that a settlement in the range suggested would be acceptable. He affirmed that plaintiff did not agree to the settlement, and that it is difficult to believe that a plaintiff who had previously asked for multiple millions of dollars would settle the same litigation for $110,000. In addition, counsel averred that plaintiff had not signed closing documents, and that the firm did not produce any of the usual documentation associated with a settlement agreement.

On November 13, 2000, a hearing was conducted, at which time plaintiff, her former counsel, and another associate from the firm testified. Plaintiff recalled that her former counsel told her that she could settle the case for $100,000 which, in her professional opinion, was a good offer, and that she should take the settlement. Plaintiff testified that when the $110,000 settlement offer was presented to her, she purportedly agreed to the amount, but did not accept the other conditions, which included a confidentiality agreement. She also stated that she did not understand the 6% assessment and costs figures. Plaintiff also asserted that she did not believe that a settlement had been reached.

Plaintiff's former counsel testified, in contrast, that after plaintiff's initial refusal to settle, counsel engaged in numerous discussions with plaintiff regarding, as relevant, plaintiff's

concerns over the confidentiality provision, and the negative impact of the report prepared by plaintiff's explanting surgeon. Counsel testified that as a result of these conversations, when she informed plaintiff of an offer by defendants in the amount of $100,000, which she believed was fair, plaintiff responded that she would settle for $110,000.

Counsel testified that she regarded the case as settled once the defendants met the demand, even though plaintiff had to execute a release. Counsel testified that on December 18, 1998, she called plaintiff and left a message stating that the matter had been settled on her terms. Counsel's testimony was corroborated by another associate from her firm.

At the conclusion of the hearing, the court found that "based upon the credible evidence," a binding settlement agreement had been reached. The court made a specific finding that plaintiff was not a credible witness. However, it nonetheless vacated the stipulation of settlement in the interest of justice. This was error.

In *Hallock v State of New York* (64 NY2d 224, 230 [1984]) the Court of Appeals reaffirmed the principle that, "[s]tipulations of settlement are favored by the courts and not lightly cast aside * * *. This is all the more so in the case of 'open court' stipulations * * * within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." (Citations omitted.) The parties dispute whether plaintiff's former counsel had actual authority to enter into the stipulation settling the case on behalf of plaintiff. A settlement is considered binding, however, even where a client is not present at the time it is entered, and where the attorney does not have actual authority, if the court concludes that counsel's actions indicate "apparent authority" to act on his or her client's behalf (*Stoll v Port Auth. of N.Y. & N.J.*, 268 AD2d 379, 380 [2000] [party who was not present when settlement was negotiated bound by attorney's actions]). "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction" (*Hallock, supra* at 231).

In this matter, plaintiff's former counsel had engaged in prior unsuccessful settlement negotiations, both in plaintiff's pres-

ence and in her absence. When the attorneys subsequently appeared in court and indicated that this case had been settled for $110,000, the court reasonably relied upon this representation. Moreover, the court held a hearing, and credited counsel's testimony and the documentary evidence, all of which supported the conclusion that the case had been settled (*see Popovic v New York City Health & Hosps. Corp.*, 180 AD2d 493 [1992]).

Finally, we find that plaintiff implicitly ratified the settlement by making no formal objection for months after she was told about it (*Suncoast Capital Corp. v Global Intellicom*, 280 AD2d 281 [2001] [six month silence constitutes implicit ratification of stipulation]; *Broadmass Assoc. v McDonald's Corp.*, 286 AD2d 409 [2001] [lack of objection for eight months constituted implicit ratification of stipulation]; *see also DiRusso v Grant*, 28 AD2d 847 [1967] [court denied motion to vacate a settlement agreement made nine months subsequent thereto]). Concur—Mazzarelli, J.P., Saxe, Sullivan, Williams and Gonzalez, JJ.