(April 16, 2015)

■ In the Matter of Isabel Drayton, a Person Alleged to be Incapacitated, Appellant, v Jewish Association for Services for the Aged, Respondent, and 98 St. Mark's Limited Partnership, Respondent. [8 NYS3d 65]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered January 9, 2014, which, insofar as appealed from as limited by the briefs, denied so much of the incapacitated person-appellant's (IP) application as sought (1) to vacate a

judgment of possession of Civil Court, New York County, Housing Part (Laurie Lau, J.), entered on or about November 12, 2013, in favor of landlord-respondent and against the IP, pursuant to a stipulation of settlement, dated November 12, 2013, between landlord and guardian-respondent Jewish Association for Services for the Aged (JASA); (2) a declaration that JASA did not have the authority to enter into the settlement; and (3) to refer the matter to Supreme Court, New York County, Guardianship-Housing Part, unanimously reversed, on the law, without costs, the judgment of possession and stipulation of settlement vacated, and the matter remanded to the joint Guardianship-Housing Part in Supreme Court, New York County for further proceedings.

In early 2013 the IP's landlord commenced a second holdover proceeding alleging nuisance caused by the IP's hoarding. In March 2013, JASA, as the IP's guardian, and landlord entered into a stipulation resolving the proceeding which provided, inter alia, that if JASA was unable to substantially comply for one year with specified standards of cleanliness, landlord could seek a judgment of possession and warrant of eviction; the parties agreed that the only issue before the Housing Court would be whether there had been a substantial breach of the stipulation. Shortly thereafter, landlord returned to Housing Court, alleging continued hoarding activity by the IP. In a decision dated August 30, 2013, Housing Court, found "sharp material disputes" as to whether the March 2013 stipulation had been breached and ordered a hearing. However, JASA, concerned about its ability to successfully defend the IP at the hearing, and the implications for the IP's relocation without advanced planning if she were to be evicted, asked the Housing Court to stay the holdover proceeding while it applied to the article 81 court for authority to place the IP in either a different apartment or a residential facility. Housing Court denied JASA's stay application, without prejudice to it seeking relief from the article 81 court. The hearing on the breach of stipulation was set for November 12, 2013.

On October 25, 2013, JASA presented a proposed order to show cause to the article 81 court, asking for the Housing Court proceeding to be stayed, and for expanded powers as the guardian regarding the IP's place of abode. The article 81 court declined to sign the order to show cause and instead directed JASA to submit a letter seeking clarification of its order appointing it as guardian. JASA complied, and in response the Supreme Court sent a letter to JASA indicating that it was of the view that the extant order appointing it as guardian al-

ready authorized it to choose the IP's place of abode. It appears that the IP was not copied on the correspondence. On November 12, 2013, rather than proceed with a hearing in Housing Court as to whether the earlier stipulation had been breached, the guardian and landlord entered into a new stipulation that provided the IP would vacate her apartment no later than seven weeks from the date the settlement was so ordered. The IP did not see or know the terms of the stipulation before it was signed, and did not appear before the Housing Court on that date.

The 2009 Guardianship Order issued pursuant to Mental Hygiene Law article 81 gave JASA the authority to choose the place of the IP's abode in the community, "only if necessary." Where an IP does not want to move from her home, the statute mandates that if it is reasonable under the circumstances to maintain her in her community and preferably in her home, the guardian has no authority to relocate that IP to more restrictive housing such as a nursing home or other residential housing (Mental Hygiene Law § 81.22 [a] [9]). The decision to move an individual from her home or community to a nursing home or other residential facility affects "constitutionally protected liberty interests" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 89 NY2d 889, 891 [1996]; *see also Matter of Eggleston v Gloria N.*, 55 AD3d 309 [1st Dept 2008]). Thus, Mental Hygiene Law § 81.36 (c) provides that when a guardian seeks the authority to remove the IP from her home and community against her wishes, the IP must be provided with a hearing on notice before the article 81 court. Alternatively, the article 81 court may for good cause shown issue an order modifying the guardian's powers to include such placement power, and shall set forth the factual basis for dispensing with the hearing (*id.*). Here, because Supreme Court declined to sign the proposed order to show cause, no hearing was held. Nor can the article 81 court's letter be deemed to satisfy the statutory requirement of setting forth a factual basis for not conducting a hearing. Accordingly, the settlement signed by JASA and landlord was entered into without first complying with Mental Hygiene Law § 81.36 (c).

Stipulations of settlement, particularly those made in open court, are favored by the courts and not lightly cast aside (*see Hallock v State of New York*, 64 NY2d 224, 230 [1984]; *34 Funding Assoc., Inc. v Pollak*, 26 AD3d 182 [1st Dept 2006]). The existence of mistake, however, can be a sufficient basis to invalidate an agreement (*see Hallock*, 64 NY2d at 230]). The mistake must be "mutual, substantial and must exist at the

time the parties enter[ed] into the contract" (*Thor Props., LLC v Chetrit Group LLC*, 91 AD3d 476, 478 [1st Dept 2012]). Both landlord and JASA had the mistaken understanding that the guardian had authority to terminate the IP's tenancy without reference to Mental Hygiene Law § 81.36 (c). This understanding was communicated implicitly, if not explicitly, to the Housing Court judge who so ordered the stipulation of settlement. As the misunderstanding "pervade[ed] the entire transaction," it is a basis for voiding the stipulation (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]). The general rule is simply not at issue here, that an attorney who lacks actual authority may enter into a binding settlement if the court concludes that the attorney's actions indicate "apparent authority" to act on behalf of the attorney's client (*Clark v Bristol-Myers Squibb & Co.*, 306 AD2d 82, 84 [1st Dept 2003]). JASA lacked authority to enter into the stipulation of settlement in disregard of the IP's constitutional right to a hearing on notice. The stipulation of November 12, 2013 is void, as is the Housing Court judgment of possession issued on about the same date.

This case highlights the benefit of having one judge preside over an IP's Housing Court and article 81 proceedings. Accordingly, upon remand, the Clerk of the Housing Court and the Clerk of the Supreme Court shall transfer both proceedings to the Supreme Court, New York County's joint Guardianship-Housing Part for further proceedings, including a hearing pursuant to article 81 as to the guardian's placement powers, and the hearing ordered by Housing Court as to whether the March 2013 stipulation was breached. Concur—Friedman, J.P., Manzanet-Daniels, Feinman and Kapnick, JJ.