Pruss v Infiniti of Manhattan, Inc. (2020 NY Slip Op 00229)





Pruss v Infiniti of Manhattan, Inc.


2020 NY Slip Op 00229


Decided on January 9, 2020


Appellate Division, First Department


Acosta, P. J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 9, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Dianne T. Renwick, Sallie Manzanet-Daniels, Anil C. Singh, Justices.



161240/13 

[*1]Eita (Itty) Pruss, Plaintiff-Appellant-Respondent,
v
Infiniti of Manhattan, Inc., et al., Defendants-Respondents-Appellants, Infiniti Financial Services, et al., Defendants.



Plaintiff appeals from the judgment of the Supreme Court,
New York County (George J. Silver, J.), entered February 9, 2018, awarding her $5 million as against defendants Infiniti of Manhattan, Inc. and Massamba Seck, and defendants Infiniti of Manhattan, Inc. and Massamba Seck appeal from the order of the same court (Adam Silvera, J.), entered June 5, 2018, which denied their motion to vacate the judgment, and from the amended judgment of the same court (Adam Silvera, J.), entered June 14, 2018, awarding plaintiff $4 million as against them.




The Edelsteins, Faegenbury & Brown, LLP, New York (Paul J. Edelstein, Daniel A. Thomas and Judah Z. Cohen of counsel), for appellant-respondent.
Lester Schwab Katz & Dwyer, LLP, New York (Paul M. Tarr of counsel), for respondents-appellants.



ACOSTA, P.J.


I write to highlight the fundamental principle that parties are bound by stipulations signed in open court by their attorneys. The issue arose in the context of a negligence case, where plaintiff was seriously injured when she was struck by a motor vehicle while standing on a [*2]sidewalk median in Brooklyn. The vehicle was owned by defendant Infiniti of Manhattan, Inc. and driven by defendant Massamba Seck [FN1] (the Infiniti defendants). Plaintiff suffered serious injuries and required extensive hospitalization and multiple surgeries. At issue in this case is whether the Infiniti defendants are bound by a settlement agreement entered into by their attorneys. We find that the Infiniti defendants are bound, because their attorneys had apparent authority to bind them to the $8,875,000 judgment. Significantly, there is no affidavit or testimony by Infiniti stating that Infiniti, or any of its employees, was unaware of the settlement or that Infiniti did not authorize the settlement. The only ones making this claim are the lawyers from the firm that was hired by the insurance companies to defend the Infiniti defendants. The fact that one of the insurers is now unable to pay its intended $5 million portion does not inure to the Infiniti defendants' benefit. Rather, the Infiniti defendants are responsible for the portion of the agreed-upon amounts that the insurers do not pay. To accept their position would alter the way litigation is conducted in New York State. Courts would have to conduct colloquies in every case to make sure that the parties, notwithstanding their attorneys' actions in appearing for them on numerous occasions and signing stipulations, acquiesced in the terms of the stipulations. That is unacceptable, especially here, where the Infiniti defendants never objected to the stipulation until the filing of the instant order to show cause more than a year and six months after the stipulation was signed in open court.
The facts herein are largely undisputed. On December 5, 2013, plaintiff commenced this action in Supreme Court, New York County, against, inter alia, Infiniti of Manhattan, Inc., Massamba Seck, Dennis Blanchette, and Jon-Paul Rorech, sounding in negligence.
Tower Insurance Company of New York was the Infiniti defendants' primary insurer, and Great American Insurance Company was their excess insurance carrier. Tower retained Lester, Schwab, Katz & Dwyer, LLP as trial counsel for the Infiniti defendants. On April 20, 2016, the parties' counsel and representatives of the insurers appeared in Supreme Court, New York County (George J. Silver, J.), to attempt settlement. This included an offer of $9,000,000, to be apportioned $5,000,000 from Tower, $3,875,000 from Great American, and the balance from GEICO on behalf of the remaining individual defendants, Blanchette and Rorech. The matter did not settle at that time, and was adjourned to August 10, 2016.
On July 28, 2016, a conservator was appointed for Tower in an action in California.
Two weeks later, on August 10, 2016, counsel for the parties entered into a stipulation of settlement for $9,000,000, so ordered by Justice Silver, that stated, "Infini[ti] & Seck - $8,875,000." In parentheses, the stipulation noted "Tower - $5 mil; Great American $3.875 mil." The stipulation also stated that defendant Blanchette would pay $100,000 and defendant Rorech would pay $25,000.
Blanchette, Rorech, and Great American paid their portions of the settlement, leaving $5,000,000 owed by the Infiniti defendants to be paid by Tower.
On August 24, 2016, after certain negotiations regarding the form of the release, plaintiff's counsel sent the executed general release to Lester Schwab Katz & Dwyer LLP and Fabiani Cohen & Hall, the Infiniti defendants' trial cocounsel, which were retained by Great American. Plaintiff's counsel provided a CPLR 5003-a notice stating that if payment was not received in 21 days, judgment would be entered against the Infiniti defendants, including interest, costs, and disbursements.
On September 13, 2016, the court in the California action approved a proposed [*3]conservation and liquidation plan for Tower, which by merger became CastlePoint National Insurance Company.
On October 30, 2016, plaintiff's counsel received an email from a senior claim analyst for AmTrust North America (Tower's third-party administrator), stating that CastlePoint's conservator had analyzed the claim settlement and advised that they would not honor the settlement because it occurred after the conservancy order. The analyst stated that the conservator offered to pay $1,000,000 cash and would provide a pre-approved claim against the estate for the $4,000,000 balance.
On March 30, 2017, CastlePoint was declared insolvent by the California Superior Court, and it was placed into liquidation.
Almost a full year after the settlement, on August 9, 2017, Justice Silver conducted an on-the-record factual hearing with all the attorneys who were present at the August 10, 2016 settlement conference. The attorney representing CastlePoint both then and at the August 10, 2016 settlement stated:
"On July 28th of 2016, CastlePoint was placed into conservation. I and my law firm did not learn about that conservation [order] until August 8th of 2016 [two days before the settlement agreement was signed by the parties]. Neither I, nor my law firm, were ever provided with the Conservation Order that was issued on July 29th of 2016. However, before I appeared on August 10th of 2016, I can't recall whether it was Monday, Tuesday or Wednesday, August 8, August 9 or August 10, but I had a conversation with AmTrust, who was the third-party administrator managing CastlePoints' policies, and confirmed that I still had the authority to appear in this Court and represent that that $5 million that had previously been offered was still available to be offered and paid in cash to Pruss.
* * *
"I didn't receive any instructions or communications from AmTrust, CastlePoint or the conservator relating to how the conservation might impact the settlements or any settlement authority, and no one ever communicated to me that that $5 million was not available in cash for purposes of the settlement. Therefore, I appeared, I made that representation to Your Honor and to all counsel and I stand by that representation."
In 2017, plaintiff commenced an action against the Superintendent of Financial Services of the State of New York as Ancillary Receiver of CastlePoint for the remaining $5,000,000, and on November 6, 2017, the Superintendent settled with plaintiff for $1,000,000. Significantly, the settlement explicitly stated that the one million was "in partial satisfaction of the plaintiff's claims against CastlePoint National Insurance Company [and the Infiniti defendants] to the extent of the payment."
Approximately three months later, on February 9, 2018, plaintiff submitted a proposed judgment against the Infiniti defendants for $5,000,000. The Clerk, sua sponte, struck the portions of the judgment that awarded interest, costs, and disbursements, and entered the judgment.
Twelve days later, on February 21, 2018, the Infiniti defendants moved by order to show cause to vacate the February 9, 2018 judgment, stay plaintiff from entering a judgment against them, or enter a proposed counter judgment of $0.00. They argued that they were unaware of and did not participate in the settlement negotiations and did not authorize the settlement and that counsel who signed on their behalf did not have authority to settle on their behalf. In addition, the Infiniti defendants argued that article 74 of the Insurance Law exempts prompt payment of [*4]the settlement amount pursuant to CPLR 5003-a(f). The order to show cause to vacate the judgment was denied by the court (Adam Silvera, J.).
I agree with the court's denial of Infiniti defendants' order to show cause. The Infiniti defendants' argument that their counsel was not authorized to enter into the settlement and that they did not participate in the settlement negotiations is without merit, inasmuch as their attorneys had apparent authority to bind them to the settlement agreement (see Hallock v State of New York, 64 NY2d 224, 230 [1984]; see also Weil, Gotshal & Manges LLP v Fashion Boutique of Short Hills, 56 AD3d 334 [1st Dept 2008]; Hawkins v City of New York, 40 AD3d 327 [1st Dept 2007]; Matter of Silicone Breast Implant Litig., 306 AD2d 82 [1st Dept 2003] ["A settlement is considered binding . . . even where a client is not present at the time it is entered, and where the attorney does not have actual authority, if the court concludes that counsel's actions indicate apparent authority' to act on his or her client's behalf"], citng Stoll v Port Auth. of N.Y. & N.J., 268 AD2d 379, 380 [1st Dept 2000]; Popovic v New York City Health & Hosps. Corp., 180 AD2d 493 [1st Dept 1992). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation" (Hallock, 64 NY2d at 230). Thus, the correct standard in reviewing an attorney's ability to settle a case is whether he had the apparent authority to do so, and, in order for a client not to be bound by the actions of his attorney, he must demonstrate that the attorney "was without authority of any sort to enter into the settlement" (Hallock, 64 NY2d at 230).
Accordingly, the burden was on the Infiniti defendants to show that their attorneys were without authority to settle the case on their behalf, and they failed to meet the burden in their motion to dismiss. Indeed, there is no evidence in the record to support the Infiniti defendants' position. As the court stated,
"Noticeably absent from the Infiniti Defendants['] papers is any contract between them and Tower Insurance or Great American which demonstrates that Tower Insurance or Great American did not have the authority to hire an attorney on behalf of the Infiniti Defendants and to enter a settlement agreement. Notably, the Infiniti Defendants' papers are devoid of any affidavit from someone with personal knowledge stating that they had no knowledge of the settlement and did not authorize such. Rather, the only supporting affirmation is from a member of the law firm of Lester Schwab Katz & Dwyer, LLP, the same firm that the Infiniti Defendants are now claiming did not have authority to enter into the Stipulation of Settlement on their behalf [emphasis added]."
The court went on to note that
"since January 2014, the Infiniti Defendants either personally, or through their insurance, hired several attorneys to represent them in this action and, for over 2 and a half years, the Infiniti Defendants did not personally appear in any of the 11 appearances in this action to defend the case or state that such attorneys did not represent them. Instead, the Infiniti Defendants let such attorneys appear on their behalf on numerous conferences with the court, and never objected to the Stipulation of Settlement until the filing of the instant Order to Show Cause, over a year and 6 months after the Stipulation of Settlement was signed in open court and so ordered by Justice Silver."
Thus, the Infiniti defendants "implicitly ratified the settlement by making no formal objection" for more than 1½ years (Hawkins, 40 AD3d at 327; Silicone Breast Implant Litig., 306 AD2d at 85). Given their attorneys' apparent authority, the Infiniti defendants "must bear [the] responsibility [for the lawyers entering into a settlement agreement]" (Hallock, 64 NY2d at 230). [*5] Nor do the cases cited by the Infiniti defendants support their position. Those cases involved insurance carriers in insolvency or conservatorship, and the recognition that the settlement would be paid out of funds from the liquidation bureau as a result, not from the individual defendants. Accordingly, those defendants could not be held responsible for any unpaid claims by the insurers. For instance, in Jankoff Joint Venture II, LLC v Bayside Fuel Oil Corp (74 AD3d 886, 887 [2nd Dept 2010]), "the record as a whole unequivocally establishe[d] that it was the intent and understanding of the parties that a settlement would be paid out of funds of the Liquidation Bureau of the New York State Department of Insurance that were set aside for the payment of claims against insolvent insurance carriers." Here, however, the Infiniti defendants' were always at risk inasmuch as it was understood that the settlement amounts would not be paid by a state insurance fund. In fact, it was made clear by an attorney representing the Infiniti defendants that the $8,875,000 would be paid in cash, i.e., not from any state fund.
Furthermore, the Infiniti defendants cannot rely on CPLR 5003-a(f). CPLR 5003-a(f) exempts settlement agreements involving insurance companies that have been declared insolvent from prompt payment because of the delays inherent in a liquidation process. Here, the Superintendent of Financial Services (the ancillary receiver for CastlePoint) settled plaintiff's claim for $1,000,000 on November 6, 2017. CPLR 5003-a(f) precluded plaintiffs from seeking prompt payment on that $1,000,000. In fact, the stipulation of settlement with the Superintendent specifically states that the agreement is subject to CPLR 5003-a(f). The remaining $4,000,000, however, is not subject to CPLR 5003-a(f) because plaintiff is seeking payment from the Infiniti defendants, not from an insurance company. In fact, the settlement explicitly stated that the $1,000,000 was "in partial satisfaction of the plaintiff's claims against CastlePoint National Insurance Company [and the Infiniti defendants] to the extent of the payment." Accordingly, after November 6, 2017, plaintiff was free to exercise her legal rights to obtain the unpaid amounts from the Infiniti defendants. She did so by having judgment entered against the Infiniti defendants on February 9, 2018, three months after she settled with the Superintendent.
Plaintiff is correct that she is entitled to interest, costs and disbursements. As plaintiff had previously been paid $1,000,000 in partial satisfaction of the $5,000,000, the court properly directed that the judgment be amended to reflect the $4,000,000 remaining due. However, the Clerk should have included statutory interest, costs and disbursements.
Accordingly, plaintiff's appeal from the judgment of the Supreme Court, New York County (George J. Silver, J.), entered February 9, 2018, awarding plaintiff $5 million as against the Infiniti defendants, should be deemed an appeal from the amended judgment of the same court (Adam Silvera, J.), entered June 14, 2018, awarding plaintiff $4 million as against said defendants, and so considered, said amended judgment should be modified, on the law, to add interest, costs and disbursements, and otherwise affirmed, without costs. The appeal from the order of the same court (Adam Silvera, J.), entered June 5, 2018, which denied the Infiniti defendants' motion to vacate the judgment, should be dismissed, without costs, as subsumed in the appeal from the amended judgment.
All concur.
Plaintiff's appeal from judgment, Supreme Court, New York County (George J. Silver, J.), entered February 9, 2018, deemed appeal from amended judgment, same court (Adam Silvera, J.), entered June 14, 2018, and so considered, said amended judgment modified, on the law, to add interest, costs and disbursements, and otherwise affirmed, without costs. Appeal from order, same court (Adam Silvera, J.), entered June 5, 2018, dismissed, without costs, as subsumed in appeal from amended judgment.
Opinion by Acosta, P.J. All concur.
Acosta, P.J., Renwick, Manzanet-Daniels, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 9, 2020
CLERK



Footnotes

Footnote 1:Plaintiff's briefs, and the judgment awarding plaintiff damages as against Infiniti and Seck, erroneously refer to Seck as "Beck."