**UNITED STATES v. 2.4 ACRES OF LAND, MORE OR LESS, IN LAKE COUNTY, ILL., et al.**

**No. 8178.**

Circuit Court of Appeals, Seventh Circuit.
Oct. 26, 1943.

Norman M. Littell and Dwight Doty, Asst. Attys. Gen., Vernon L. Wilkinson, Atty., Lands Division, of Washington, D. C., and J. Albert Woll and Clarence W. Beatty, Jr., both of Chicago, Ill., for appellant.

Paul C. Behanna, of Highland Park, Ill., and William S. Jacob, both of Chicago, Ill., for appellees.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Appellant appeals from a judgment awarding damages in a condemnation suit tried by a jury, instituted by the United States,[1] to condemn certain lands for the purpose of establishing a recreational center for soldiers stationed at Fort Sheridan, adjacent to the Fort in Lake County, Illinois. The jury returned a verdict of $29,000, apportioned as follows: to Ethel Johnson, $7,500; to J. L. Bullivant for his leasehold interest, $500; and to John O. Meyers, Jr., and Charles Gentilini, $21,000.

---

[1] Under the Acts of August 1, 1888, 25 Stat. 357, 40 U.S.C.A. § 257; October 14, 1940, 54 Stat. 1125, as amended, 42 U.S. C.A. § 1521; and February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a.

The trial court required a remittitur of $1,000 from the verdict and entered judgment for $28,000.

The property involved—a one-story and partial basement stucco building and a one-story frame barn—was owned by Ethel O. Johnson and had been leased to the appellees, John O. Meyers, Jr., and Charles Gentilini,[2] who, in April, 1938, demolished the building and erected thereon a bowling alley, equipped with a bar, lavatories, locker rooms, cloakrooms, and a utility room, containing heating and ventilating facilities. The barn was leased by the appellees to J. L. Bullivant. There was evidence that the building was well adapted to a commercial recreational use for which there was a demand in the community.

Three witnesses experienced in appraising real estate, none of whom, however, had any experience with the sale or rental of property in the city in which the land in question was located, testified on behalf of the appellant as to the value of the property. All arrived at the figure of $18,000.

Earhart and Brown, two experts having many years' experience in the sale, rental, and management of property in the locality of the premises in question and familiar with the sale and rental values, testifying in behalf of the appellees, valued the property at from $30,000 to $31,619.

Earhart detailed his "approaches" and arrived at two figures. He stated he gave consideration to the reproduction costs of the improvements ($28,963) less depreciation of fifteen per cent ($4,344), which left a net figure of $24,619; that he valued the land at $7,000; and that that sum added to the net cost of the building made a total value of $31,619. Figuring value on a capitalization basis, he reached two different results. In one he capitalized an assumed gross annual rental of $3,000 at ten per cent to get the figure of $30,000. In the other, he capitalized an estimated annual net rental of $2,400 and arrived at a figure of $30,026. After detailing these "approaches" to value, he testified that in his opinion the fair market value of the premises was $23,026. To us it is clear that he had reference to the value of the premises after deducting the value of the land.

The witness Brown, after testifying that he valued the lot at $7,000 and that the depreciated reproduction cost of the building was $23,542, making the total $30,542, stated that in his opinion the fair, reasonable market value of the property was $28,000.

A reversal is urged here principally upon the ground that the verdict of the jury is not sustained by the facts in the record. The argument is, that in returning a verdict for $29,000, the jury must have been confused by the different methods used by the witnesses in arriving at their opinion of fair market value.

■ True it is, that the jury may not ignore the evidence and fix compensation contrary thereto, City of Chicago v. Witt, 289 Ill. 520, 124 N.E. 638; City of Chicago v. Koff, 341 Ill. 520, 173 N.E. 666; neither has the jury the right arbitrarily to ignore or discredit the testimony of unimpeached witnesses so far as they testify to facts, but no such obligation attaches to witnesses who testify merely to their opinion, and the jury may deal with it as they please, giving it credence or not, as their own experience or general knowledge of the subject may dictate. The Conqueror, 166 U.S. 110, 131, 17 S.Ct. 510, 41 L.Ed. 937.

■ The Fifth Amendment to the Constitution provides that private property shall not be taken for public use without just compensation, and it has been held that such compensation means the full and perfect equivalent in money of the property taken, so as to place the owner in as good position pecuniarily as he would have occupied if his property had not been taken. The ascertainment of that compensation is not controlled by artificial rules or a general formula, but is measured in various ways depending upon the circumstances of each case. All that is required, is that there be a reasonable judgment having its basis in a proper consideration of all relevant facts appearing in evidence. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. ——, and Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 45 S. Ct. 465, 69 L.Ed. 890. And so, where the different theories and processes (approaches) submitted by witnesses for ascertaining the value of property taken lead to widely differing results, and the opinions of the witnesses themselves are conflicting and wholly irreconcilable, and there is sufficient evidence upon which the verdict may be sustained, the verdict will

---

[2] The lease contained an agreement that the appellees could purchase the property for $7,500. This option was exercised and they became the equitable owners.

not be disturbed, unless it is manifest, from all the circumstances in the case, that the jury adopted a false theory in arriving at their conclusion. Green v. City of Chicago, 97 Ill. 370, 373.

In our case, there was no evidence of sales of property similarly situated to the property involved. The opinions of value (for land and improvements) ranged from a figure of $18,000 to $28,000, "at best, a guess by informed persons," United States v. Miller, 317 U.S. 369, 375, 63 S. Ct. 276, 87 L.Ed. ——, and were not binding upon the jury, Peoria, Bloomington & Champaign Traction Co. v. Vance, 234 Ill. 36, 84 N.E. 607; Head v. Hargrave, 105 U.S. 45, 26 L.Ed. 1028, but the jury was in duty bound to consider all relevant facts appearing in evidence, including the "approaches" as detailed by Earhart, one leading to a value of $30,026 and the other to $31,619. Under such circumstances, we cannot say that the jury was confused, adopted a false theory, or that the verdict was beyond the range of the testimony.

Appellant also claims that when a jury has misconceived the evidence, its verdict cannot be cured by remittitur. Since, however, we have concluded that there was evidence upon which the verdict could fairly rest, it will not be necessary to discuss this contention.

The appellant next contends that the court erred in permitting the jury to view the premises.

Counsel for appellant concedes that under the Eminent Domain Act, § 9, chap. 47, Ill.Rev.Stat.1941, the jury, at the request of either party, shall go upon the land sought to be taken, but he argues that because of the Declaration of Taking Act, 40 U.S.C.A. § 258a, which authorizes the taking of possession and title before trial, the Illinois law should not have been followed, since there is no provision in the Illinois act to which conformity is had, whereby a condemner may obtain possession and title prior to trial. With this argument we are unable to agree.

It is worthy to note that there is nothing in the Declaration of Taking Act that expressly or by implication refers to a jury view in a condemnation proceeding, nor does it repeal or modify § 258, which prescribes that the procedure in United States district courts in condemnation suits shall be in accordance with the laws of the State in which the court is held. Its purpose was to enable the United States to obtain immediately the property sought for public use, and not await the delays incident to litigation. A jury view does not interfere with this purpose.

It has been held that laws authorizing the exercise of the sovereign power of eminent domain are to be strictly followed, Delaware L. & W. R. Co. v. Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523, 56 A.L.R. 756; City of Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950, and that the practice and procedure in condemnation proceedings in federal courts must be according to the forms and methods of procedure afforded by the law of the State in which the court sits. United States v. Miller, 317 U.S. 369, 380, 63 S.Ct. 276, 87 L.Ed. ——. In discussing the rights of the owner of property, the court in Kaukauna Water-Power Co. v. Green Bay & Mississippi Canal Co., 142 U.S. 254, 272, 12 S.Ct. 173, 177, 35 L.Ed. 1004, said: " * * * his private property under the protection of the constitution * * * cannot be taken * * * 'without compensation,' or 'without due process of law,' * * *. With respect to such rights, we have held that the law of the State, as declared by its Supreme Court is controlling as a rule of property." And the Supreme Court of Illinois has held that the right granted by § 9 of the Eminent Domain Act is peremptory, leaving no discretion in the court. Kankakee & Seneca R. Co. v. Straut, 102 Ill. 666.

The point is also made that because the appellant had, prior to trial, made substantial changes in the property, it was error to permit a jury view.

It appears from this record that before the jury viewed the premises, they were instructed to eliminate from their view the changes made in the premises, and that after all the evidence had been presented, the court instructed the jury that the controlling date—the time of taking—was December 5, 1941, and that they were to find the fair cash market value of the property at the time of the taking, and were not to consider the improvements and alterations which appeared from the evidence to have been made by the United States. It also appears that all of the witnesses testified to the value of the property prior to any improvements or alterations made by the appellant. Under this state of the record, we do not think error was com-

mitted. Forbes v. United States, 5 Cir., 268 F. 273, 278.

Another point made by the appellant is that improper evidence was admitted. It appears that one Claud Mitchell testified that the reproduction cost, as of the date of valuation, was $28,963. In the ascertainment of value or just compensation, the cost of reproduction as of the date of valuation constitutes evidence properly to be considered by the jury, Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 69 L.Ed. 890, and since appellees' witnesses, Brown and Earhart, had testified that the building did contribute to the fair market value of the property as a whole to the full extent of its reproduction cost, less depreciation, we perceive no reversible error in admitting it. The judgment of the District Court will be affirmed. It is so ordered.