PUERTO RICO HOUSING AUTHORITY, Plaintiff and Appellee, v. MARÍA DEL CARMEN VIERA ECHEGARAY ET AL., ETC., Defendants and Appellants.

No. 10160.   Argued November 6, 1950.—Decided June 29, 1951.

684

*Rafael Soltero Peralta* for appellants.   *R. B. Pérez Mercado* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The Housing Authority of Puerto Rico in order to develop a low cost housing project for persons of small incomes, filed this eminent domain proceeding against María del Carmen Viera Echegaray Amadée, Teodoro, and Deogracias Viera Echegaray, the three of them, minors, represented by María Echegaray widow of Viera, their mother with *patria potestas*, for the acquisition of three parcels of land belonging to defendants, located in Hato Rey, Río Piedras. The first of these parcels has an area of 14.8399 cuerdas, and is identi-

fied in the complaint as parcel M–A. The second parcel has an area of 25.9519 cuerdas and is identified in the complaint as parcel M–B. The third has an area of 6.6994 cuerdas and is identified as parcel M–C. The total area of the condemned property is 47.4912 cuerdas.

The Authority plaintiff filed a Declaration of Taking and Material Delivery of the Property and deposited in the lower court the sum of $50,000 as reasonable value of the land sought to be condemned. On August 14, 1945 it was vested with the title of ownership.

Defendants in their answer claimed that the condemned land was worth $255,000. The lower court, after an elaborate trial which lasted several days and after making an inspection of the land, granted the complaint and ordered the Authority plaintiff to pay defendants the sum of $13,442.30 in addition to the $50,000 originally deposited in the court, plus the legal interest on said additional sum from August 14, 1945 until its full payment.

Defendants took an appeal to this Court and allege in their brief that the lower court erred (1) in appraising the condemned land for an amount which is not sustained by either plaintiff's or defendants' evidence; (2) in refusing to admit in evidence certain deeds of sale of lots of a nearby development—Valencia Development—made during the years of 1945 to 1948; (3) in disregarding the selling price of similar lots sold during the years 1944 to 1947 in the vicinity of the condemned parcels M–A and M–B, notwithstanding the fact that corresponding deeds of sale were admitted in evidence; (4) in disregarding the testimony of the four experts of the defendant; and (5) in refusing to accept as just value of the parcels M–A and M–B, the sum of $249,000 as it was established by defendants' documentary and oral evidence.

In fixing the value of the three condemned parcels in the amount of $63,442.30 the lower court distributed said

sum as follows: For the parcel M–A of 14.8399 cuerdas; $28,195.81; for parcel M–B of 25.9519 cuerdas, $28,547.09; and for parcel M–C of 6.6994 cuerdas, $6,699.40.

The present appeal involves the value of parcels M–A, and M–B because regarding parcel M–C appellants accept as correct the determination of the lower court.

Arguing their first assignment of error appellants allege that the trial judge, in fixing the value of parcels M–A and M–B in $1,900 and $1,100 per cuerda, respectively, rejected the appraisal of the only expert witness of the Authority plaintiff, W. W. Rank, as well as the appraisal of defendants' four expert witnesses, J. M. Canals, Charles Llenza, José C. Salgado, and Ismael Flores Lugo, and that, therefore, the conclusion reached by the lower court is not supported by the evidence. We do not agree. The court was not bound to follow blindly the opinion of the expert witnesses of either party, *People* v. *Sutton*, 17 P.R.R. 327; *People* v. *Bonelli*, 19 P.R.R. 65; *León* v. *Industrial Commission*, 58 P.R.R. 905; *People* v. *Dones*, 56 P.R.R. 201, and hence to fix the compensation for the condemned property in the amount suggested by them. In condemnation proceedings the duty of the court to fix a just compensation is not limited by the criterion of value of any one witness. *Phillips* v. *United States*, 148 F. 2d 714 (C. A. 2, 1945); *United States* v. *2.4 Acres of Land, More or Less, Etc.*, 138 F. 2d 295 (C. A. 7, 1943); *Burnet* v. *Central Nebraska Public Power & Irr. Dist.*, 125 F. 2d 836 (C. A. 8, 1942). In condemnation proceedings a court should fix the just value of the property in the light of whichever testimony in its judgment deserves credit and is based on a number of facts which should be considered for appraising the property, as well as any other adequate proof under the rules authorized therefor. It cannot be alleged that if the judicial determination is not in accordance with the estimates of the experts for either side, the same is not sustained by the evidence because it is different to their valuation.

In the case at bar, the value given by the court to the condemned property is within the range made by the expert witnesses, it being closer to plaintiff's expert. The judge himself had an opportunity to take notice on the premises when he made the inspection. We do not believe that the first error assigned was committed.

The second error is groundless also. It is alleged that the lower court erred in not admitting in evidence certified copies of deeds of sale of lots on the Valencia Development in Hato Rey, near the condemned land. The market value of condemned property may be established by evidence of sale of other properties if they are similar to the condemned property and if the sale is contemporaneous. *People* v. *Huyke*, 70 P.R.R. 720. The deeds of sale that were offered in evidence and rejected and to which this second assignment refers, involved sales of lots in the Valencia Development of Hato Rey, which although adjacent to the condemned parcels, was an urbanization in full development with streets, sewerage, installation of water and lighting systems, while the parcels condemned were rural extensions of land of considerable size. Although it is true that the use to which the property is devoted is not the only index for fixing the market value of a property but that the best use for the property in a reasonably near future should also be considered, *People* v. *Heirs of Rabell, ante*, p. 536, and cases therein cited, the sale of lots in the Valencia Development could not be considered as the sale of similar property, for like in *People* v. *Huyke, supra*, we must consider herein that the condemned property are not lots but a parcel of land. *Cf. People* v. *Carmona*, 70 P.R.R. 292; *Housing Authority* v. *Sagastivelza, ante*, p. 262.

By the third assignment of error it is alleged that the trial court erred in ignoring the selling price of parcels of land similar to the M–A and M–B parcels. The specific sales are the following: (1) parcel of one cuerda sold on

December 30, 1944 for $8,000 (that same parcel sold on April 14, 1947 for the sum of $8,000 and on July 7, 1947 for $18,000;) (2) parcel of 2,995 square meters sold on July 11, 1947 for the sum of $11,983.95 and (3) parcel of one cuerda sold on May 24, 1948 for the price of $20,000.

The area of each one of the said parcels is not in proportion with the condemned parcels, and its description and location, as it appears from the record, demonstrate that they are located in a zone in process of urban development, near Carpenter road, one of them near the Quintana Racetrack. We cannot agree, therefore, with appellants in that they are similar sales.

■ The fourth assignment alleges that the lower court erred in ignoring the testimony of defendants' expert witnesses. We already said that the trial judge was not compelled to rely on the testimony of the expert witness of either party. Evidently defendants' witnesses were not sufficiently persuasive—in view of the factors considered to formulate their conclusions—to convince the court that their assessments were correct and suitable. They formed their opinion by taking into consideration the price of the lots in the developments near the condemned lands, and calculating as to the value of said lands after being submitted to the process of development, deducting the cost of development and calculating a profit margin on the basis of possible selling prices of the lots. In order to show clearly the process followed by appellants' expert witnesses in appraising the lots, and which is not in harmony with the doctrine set forth by this Court in *People v. Huyke, supra,* let us examine the following conclusions of witnesses Salgado, Llenza, and Canals, after they testified regarding the estimate value of the condemned land:

José E. Salgado in answer to plaintiff's attorney set forth the procedure followed for its valuation in the following manner:

"Q. Is the value you ascribe to said land based on your estimate of the cost to urbanize and on the value of the lots once they are urbanized?

"A. Yes, sir.

"Q. Are you resting on that basis to determine the value per square meter?

"A. He is selling by square meters and calculating the urbanizing cost per square meters."

Charles Llenza likewise testified:

"Q. So you appraise said lands as worth eight thousand dollars, that is, two dollars per square meter, and if you add said two dollars to the $2.25 for urbanizing the original cost would be $4.25 or $4.50 per square meter? Then you calculate the profit that you could obtain considering the piece of the lots, after the development is completed?

"A. Exactly.

"Q. In other words, you are estimating its value before it is urbanized, adding the cost of the construction to the selling price of the lots once urbanized?

"A. Yes, sir."

J. M. Canals stated it in the following manner:

"Q. Can you tell the court what factors did you take into consideration to arrive at the appraisal you made of each parcel to which you have referred?

"A. I studied the land and tried to determine the best use for it, having arrived at the conclusion that since 1941, the best use for that land is a development and, therefore, I took into account the sale of lots I had made in similar developments and calculating the cost of the development, and the meters to be ceded for streets, I calculated the remaining meters on the basis of prices obtained in nearby developments, then I divided it by the total number of cuerdas and got the $8,000 for the land adjacent to the Valencia development. I used the same procedure—but allowing the time necessary for the development of the project—to determine the price of the other twenty-six cuerdas."

It is evident that the trial judge could not rest on the testimony of these experts.

■ The fifth assignment charges that the lower court

erred in denying the amount of $249,000 as just value for the parcels M–A and M–B. This amount corresponds to the estimate of experts for defendants. We have already seen why, fundamentally, said estimate could not be considered by the trial judge as a proper basis for his determination. On the other hand, when the condemnation proceeding was commenced, the parcels M–A and M–B were pasture lands. Parcel M–A is adjacent to the Valencia Development, but it lacked access to said development except by foot, horseback or coach. Even though at the time of the inspection made by the trial judge on October 29, 1948, it was stated that the condemned lands "are not connected with the Valencia Development, nor with Carpenter road by any means of communication whatsoever." About 12 or 13 cuerdas of the parcel M–B were low and damp lands, at about the same water level of the San José lagoon. The low part of said parcel was flooded during flood-tide when the waters of a brook overflowed it. The same lacked, at the date of its condemnation, an adequate communication for urban development. As defendants' own expert Canals said, in order to connect parcel M–A with parcel M–B, in case they are developed, it is necessary to acquire lands from adjoining owners, for the exit of the M–B parcel was inadequate, consisting of a servitude of right of way over the different parcels and adjacent lands. Parcel M–B was farther away from the urbanized areas than parcel M–A. Notwithstanding, the lower court, in fixing the compensation for each parcel, had in mind the future possibilities of each one for development purposes. In referring to parcel M–A and fixing its value at $1,900 per cuerda, it stated: "This parcel is the only one which could really have development possibilities in a near future." And in referring to parcel M–B and fixing its value at $1,100 per cuerda, it said: "The possibilities of urbanizing this parcel are remote because of its configuration, as it is a narrow, long, and irregular strip of land, both in its contours as well as its topography."

We are not convinced, after a thorough study of the bulky record before us, that the lower court committed any of the errors assigned. Rather, displaying a high sense of justice, after giving the parties ample opportunity to present their evidence, it arrived at the valuation which it considered appropriate under the circumstances of the case and gave credit to that evidence which it considered persuasive to make a correct determination. Defendants placed themselves out of range of persuasion when they sustained excessive estimates and considered uncertain and indeterminate facts in their appraisal of the land. In plaintiff's evidence and in his own observations, the trial judge found adequate basis to arrive at his conclusions.

Judgment will be affirmed.