■ JAMES GUCCIARDO et al., Respondents, v JOHN NORMAN, Appellant.—In an action to compel specific performance of a contract for the sale of real property, the defendant appeals from a judgment of the Supreme Court, Suffolk County (Underwood, J.), entered December 11, 1986, which, after a nonjury trial, directed the defendant to convey the realty to the plaintiffs.

Ordered that the judgment is reversed, on the law and the facts, with costs, and the complaint is dismissed.

The contract of sale on which this litigation is premised required that the defendant convey to the plaintiffs the property "as appears on the attached survey". It also specified that the sale was subject to "any state of facts an accurate survey may show, provided same does not render title unmarketable". The existence of utility poles and lines is noted on the survey. Moreover, the plaintiffs, who live adjacent to the parcel, acknowledged that they were aware that the poles had existed on the property for 10 years and that they considered including in the contract some provision regarding their removal. No such provision was inserted, however. The only condition attached to the plaintiffs' obligation to close title was the filing of a final subdivision map, which was accomplished several days after the signing of the contract.

The plaintiffs adjourned the closing three times, initially because of financial difficulties, although they also voiced objection to the existence of the utility poles. The trial court found, and the record supports the conclusion that, upon the first adjournment of the closing, the defendant agreed to have the utility poles removed by the utility companies that put them there so long as the closing occurred quickly. The defendant immediately took appropriate steps to have the poles removed but attendant bureaucracy prevented immediate compliance. The plaintiffs thereafter adjourned the closing a second time. On the third date fixed for closing, the defendant appeared but the plaintiffs did not. The trial court found that the title insurance company agreed to insure title " 'in strict conformity to the bargain struck between the parties' ". Prior to the fourth closing date, the defendant sent the plaintiffs an unequivocal time-is-of-the-essence letter and duly appeared on the date fixed, ready to proceed. The plaintiff James Gucciardo also appeared, but instead of tendering the balance of the purchase price, he had his secretary serve the defendant with papers commencing this litigation. Approximately one month later, in October 1982, most of the utility poles were removed or relocated. The remainder of the wires and poles were removed in April 1983. The trial was conducted in January 1985.

The theory upon which the plaintiffs base their claim for specific performance is that the existence of the utility poles constituted a defect in title which, although uncured at the time title was tendered, was cured at the time of trial, thereby enabling the defendant to convey title in accordance with the contract terms *(see, S.E.S. Importers v Pappalardo,* 53 NY2d 455). That theory is ill founded. There was no proof that the existence of the utility poles, for which no easement was recorded, rendered title unmarketable or uninsurable and the plaintiffs, on notice of the condition of the land, specifically agreed to purchase the property "as appears on" the survey *(cf., Laba v Carey,* 29 NY2d 302, *rearg denied* 30 NY2d 694). Although the defendant agreed to have the poles removed, he did so to facilitate the closing rather than as a premise for delay. The defendant was entitled to demand performance from the plaintiffs and to declare them in default when they refused to close on the "law day" *(see, Woodwork Display Corp. v Plagakis,* 137 AD2d 809; *cf., Levine v Sarbello,* 112 AD2d 197, 200, *affd* 67 NY2d 780).

The trial court based its conclusion that the plaintiffs were entitled to specific performance not on the dictates of the

contract but because of a finding that, shortly after the commencement of litigation, the parties entered into a new agreement whereby the defendant agreed to remove the utility poles prior to the closing. In so doing, the trial court improperly permitted testimony about an oral stipulation of settlement. However, the defendant's testimony that he did not know of the terms of the agreement and had not agreed to a settlement was uncontroverted by the plaintiffs, who bore the burden of showing that the defendant's attorney had the authority to settle the case. We find the trial court's conclusion that the parties were bound by this new agreement, notwithstanding the absence of a writing (cf., CPLR 2104), because of their performance of it, to be wholly unsupported by the record. We note, moreover, that neither party claimed, during the 2½ years between commencement of the litigation and trial that there was a new agreement.

The plaintiffs, whose proof at trial of their ability to purchase the premises was far from compelling, breached the contract by failure to close title on September 1, 1982, pursuant to its terms. They were therefore not entitled to specific performance and their complaint is dismissed. Mangano, J. P., Bracken, Spatt and Harwood, JJ., concur.