# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-2994 & 03-3098

SARKES TARZIAN, INC.,

*Plaintiff-Appellee-Cross-Appellant*,

*v.*

U.S. TRUST COMPANY OF FLORIDA
SAVINGS BANK,

*Defendant-Appellant-Cross-Appellee*.

———————

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 99 C 165—**Richard L. Young**, *Judge.*

———————

ARGUED APRIL 8, 2004—DECIDED FEBRUARY 14, 2005

———————


Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Sarkes Tarzian, Incorporated ("STI") brought this suit for breach of an oral contract for the sale of non-publicly traded shares of STI stock against U.S. Trust Company of Florida Savings Bank ("U.S. Trust"). A jury found that U.S. Trust breached its contract entered into by James Pressly, who was acting on U.S. Trust's behalf, and awarded STI $4 million in damages. U.S. Trust appeals the district court's denial of its motion for judgment as a matter of law, or in the alternative a new trial, and STI appeals a number of the district court's rulings. For the

reasons discussed, we find that STI presented no evidence at trial showing that Mr. Pressly had actual authority to bind U.S. Trust in a contract. We reverse the district court's denial of U.S. Trust's motion for judgment as a matter of law and remand for entry of judgment for U.S. Trust. We also find that the jury instructions that the district court gave to the jury were sufficient to apprise the jury correctly of the applicable law of agency under New York law. As such, the district court did not err by refusing to instruct the jury on apparent authority. Because we find that there was no contract between STI and U.S. Trust, we will not address STI's arguments.

## I. Background

STI is a closely-held Indiana corporation. STI, which owns and operates four radio and two television stations, was founded by Sarkes Tarzian and his wife, Mary Tarzian. Mary Tarzian's will stated that upon her death, her shares in STI were to be transferred by her estate (the "Estate") to the Tarzian Family Trust ("the Family Trust"). Mary Tarzian hired James Pressly, a Florida trust and estates lawyer, to revise her will and trust documents, instructing him to modify these documents so that within nine months after her death, the Family Trust's trustees could disclaim, or legally detach themselves from, the 301,119 shares of $4 par value STI stock that Ms. Tarzian owned. One way for the trustees to disclaim themselves of the stock was to sell it. After the trustees disclaimed this stock, the shares would pass to the Mary Tarzian Charitable Foundation. This action would enable the Estate to avoid paying death taxes. U.S. Trust, the personal representative of the Estate, and Patricia Tarzian (Mary Tarzian's daughter) were appointed trustees of the Family Trust. After Mary Tarzian died on June 7, 1998, U.S. Trust retained Mr. Pressly as counsel for the Estate. Through Mr. Pressly, U.S.

Trust retained a broker to find a purchaser for the shares.[1]

U.S. Trust had some difficulty finding a buyer for the shares because Tom Tarzian, a beneficiary of the trust, was unwilling to sell his controlling interest in STI.[2] With the nine-month deadline fast approaching and no willing buyer for the shares identified, Mr. Pressly, on behalf of U.S. Trust, held a meeting with representatives of STI on January 25, 1999 in New York City. The purpose of the meeting was to negotiate a sale of the shares. Present at the meeting were Tom Tarzian and two STI attorneys, Herbert Camp, and Valerie Carney; Mr. Pressly, as the Estate's legal counsel; and periodically by telephone, lawyers who represented Patricia Tarzian, co-trustee of the Family Trust and beneficiary of the Estate and Trust. However, no principal of U.S. Trust attended this meeting.

There is little dispute about what the parties said at the meeting. Mr. Pressly started the meeting by telling the STI representatives not to be concerned about the fact that no one from U.S. Trust was present. Reading from his pre-pared notes, Mr. Pressly stated, "U.S. Trust is standing by, is fully briefed, and is prepared to sign a definitive purchase and sale contract today if we can negotiate one." STI Attorney Carney's notes also reflect that Mr. Pressly made this statement. Mr. Pressly also stated during the meeting that, "If there is a way to cut the Gordian knot, we're here at your invitation to decisively make a deal today."

U.S. Trust's Chairman and CEO, Townbridge Callaway III, and U.S. Trust Senior Vice President, Ann Cavanaugh, testified that Mr. Pressly had authority to negotiate a sale of the shares but did *not* have authority to enter into a

---

[1]  The shares are not publicly traded and pay no dividends.

[2]  Tom Tarzian has voting control of and elects STI's Board of Directors.

contract on behalf of the Estate. After almost a day of negotiation, Mr. Pressly proposed a sale price of $4 million in cash and $3 million in the form of a promissory note. Mr. Pressly stated, "I am authorized to make this offer."

Following some further negotiations, STI offered to purchase the shares for $4 million cash and a $2 million promissory note. The promissory note had a six-year term at a 7% interest rate. Mr. Pressly conferred with Patricia Tarzian's counsel and then stated, "This is not what we had hoped for and I can't say we're happy with it, but we'll take it." Tom Tarzian asked Mr. Pressly if they had a deal. Mr. Pressly replied, "[y]es, we have a deal." After Mr. Pressly made that statement, the parties shook hands.

Mr. Pressly was then told that STI's general counsel, Valerie Carney, was marking up a sale agreement. Supposedly, Ms. Carney was using as a template the contract for an earlier sale of Patricia Tarzian's STI shares to STI. Ms. Carney faxed the document to Mr. Pressly that night. After leaving the meeting and on his way to the airport, Mr. Pressly received a message from Gray Communications, Inc. offering to pay U.S. Trust $10 million in cash for the shares. On January 28, 1999, U.S. Trust sold the shares to Gray's affiliate, Bull Run, for that price. That same day, Mr. Pressly informed STI of the Bull Run transaction. On February 2, 1999, STI wrote to U.S. Trust asserting that it had a binding contract and demanded return of the shares.

Ten days later, STI sued Bull Run and the Estate, naming U.S. Trust as the Estate's personal representative.[3] STI claimed that the Estate breached an oral contract to sell its shares to STI for $4 million in cash and a $2 million promissory note. STI had two theories about how the oral

---

[3] Bull Run moved to dismiss for lack of personal jurisdiction. Ultimately, STI filed a notice of dismissal without prejudice as to Bull Run.

contract was made: (1) that the parties had agreed to all material terms and had agreed to negotiate a written document in good faith (referred to under New York law as a "Type I" agreement); or (2) that the parties had agreed to certain important terms and had agreed to negotiate the remaining terms in good faith (referred to under New York law as a "Type II" agreement). STI sought specific performance of the oral contract or damages resulting from the breach.

With motions for summary judgment on both Type I and Type II agreements denied, the case went to trial. The jury found that the Estate had entered into a binding Type I agreement, and awarded STI $4 million in damages. This amount represented the difference between the STI contract price (total of $6 million) and that of Bull Run ($10 million). Per the district court's jury instructions, the jury made no finding on the alleged Type II agreement.

U.S. Trust renewed its motion for judgment as a matter of law and, in the alternative, a new trial. The district judge denied both motions and STI filed a motion to amend the judgment, seeking specific performance and prejudgment interest from the date U.S. Trust allegedly breached the contract. The district court denied the request for specific performance but granted STI prejudgment interest from August 29, 2002—the date the district court found STI to have been damaged by the breach—through February 3, 2003, the date of the jury's verdict.[4] U.S. Trust appeals the judgment and related rulings. STI cross-appeals the district court's refusal to permit STI to recover benefit-of-the-bargain damages and the district court's order denying specific performance. It also cross-appeals the district court's refusal to award prejudgment damages from the date of the breach.

---

[4] August 29, 2002 is the date STI established an employee stock plan.

## II. Analysis

While the parties' briefs present us with many issues, we must decide as a threshold matter whether the district court properly denied U.S. Trust's motion for judgment as a matter of law. U.S. Trust's central argument in support of its motion is that no binding contract of any type was created between U.S. Trust and STI. U.S. Trust asserts that Mr. Pressly, the attorney representing the U.S. Trust, did not have the authority necessary to bind U.S. Trust in a stock purchase and sale agreement. As a result, U.S. Trust contends the matter should not have gone to the jury, and the district court's judgment should have been for the Estate as a matter of law. Consequently, U.S. Trust argues that STI can claim no damages for U.S. Trust's sale of the STI shares to Bull Run.

We review *de novo* the district court's denial of a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004); *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 343-44 (7th Cir. 1995). We examine all of the evidence in the record to determine whether a reasonable juror could have found in favor of the non-moving party, drawing all reasonable inferences in the non-moving party's favor, and refraining from weighing the evidence or making credibility determinations. *Harvey*, 377 F.3d at 707 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). We note that "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003) (internal citations omitted).

Oral contracts for the sale of stock are enforceable under New York law, N.Y. U.C.C. § 8-113(a) (providing, in

pertinent part, "a contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making.") We therefore direct our attention to the question of whether there was sufficient evidence presented at trial to demonstrate that Mr. Pressly had the authority to bind U.S. Trust in the oral contract with STI.[5] The party asserting that an attorney had authority to enter into a contract on behalf of the attorney's client (in this case, STI) bears the burden of proving it. *Nash v. Y and T Distribs.*, 616 N.Y.S.2d 402, 403 (N.Y. App. Div. 1994); *Slavin v. Polyak*, 470 N.Y.S.2d 38, 39-40 (N.Y. App. Div. 1984). Without the authority for the agent to bind its principal in a contract with a third party, or without the principal's subsequent ratification, the contract must be set aside under New York law. *Nash*, 616 N.Y.S.2d at 403.

A party's mere retention of an attorney, and its assignment to that attorney the responsibility to negotiate on behalf of the client does not create authority in the attorney to bind the principal in a contract. *Id.*; *see also Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973) ("An agent's power to bind his principal is coextensive with the principal's grant of authority.") With this rule in mind, the question before this court is what kind of authority is sufficient under New York law? Is actual authority sufficient, or does a party need actual and apparent authority?

---

[5] The parties do not dispute that we are to apply New York law to their substantive claims. The district court did not decide whether Florida or New York law should apply to the question of Mr. Pressly's authority. However, the district court noted that the law of the two states on this subject is the same. We agree. We therefore apply New York law.

The highest court of the state of New York, the New York Court of Appeals, has explicitly recognized that "without a grant of authority from the client, an attorney cannot compromise or settle a claim." *Hallock v. State*, 474 N.E.2d 1178, 1181 (N.Y. 1984). *See also Nash*, 616 N.Y.S.2d at 403 ("It is settled [New York] law that an attorney must be specifically authorized to settle and compromise a claim."). While this language suggests that only actual authority will do, as U.S. Trust contends,[6] closer study reveals that apparent authority can also suffice. *See Hallock*, 474 N.E.2d at 1181-82 (finding that principal had cloaked attorney in apparent authority and therefore was bound by a settlement agreement into which attorney had entered client in open court). *See also Clark v. Bristol-Meyers Squibb and Co.*, 761 N.Y.S.2d 640, 643 (N.Y. App. Div. 2003) ("A settlement is considered binding, however, even where a client is not present at the time it is entered, and where the attorney does not have actual authority, if the court concludes that counsel's actions indicate 'apparent authority' to act on his or her client's behalf.").

A principal confers actual authority on his agent when he objectively manifests to the agent consent to the agency. *Ojeni v. Lieber*, 759 N.Y.S.2d 453, 454 (N.Y. App. Div.

---

[6]  U.S. Trust cites Restatement (Third) of Law Governing Lawyers § 22(1) and comment (e) to that section to support its contention that an attorney must have actual authority from the client to bind the client in a significant contract. However, the parties have not pointed us to, nor has our own research yielded any cases demonstrating the New York Court of Appeals's adoption of these particular provisions. In addition, we have found no cases decided by New York's intermediate courts which would indicate that these provisions would most likely be adopted by the New York Court of Appeals. Therefore, we rely on the actual pronouncements of the New York Court of Appeals on the law of its state on this issue. These holdings are in such cases as *Hallock*, and other New York cases which are consistent with *Hallock*.

2003). As for apparent authority, it is created by "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock*, 474 N.E.2d at 1181. New York explicitly rejects the idea that an agent can confer apparent authority on him or herself. *See id.* "Rather, the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent." *Id.* (quoting *Ford,* 299 N.E.2d at 664 and Restatement (Second) of Agency § 27 (1958)). Furthermore, we note that a third party may rely on an appearance of authority in such circumstances "only to the extent that such reliance is reasonable." *Id.* Finally, the New York Court of Appeals has held that "[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority." *Ford*, 299 N.E.2d at 664. With these principles in mind, we turn to the facts of this case to discern whether there was sufficient evidence presented to support a finding that Mr. Pressly had actual or apparent authority to bind U.S. Trust in a contract with STI.

### A.  Actual Authority

Because there was no writing between U.S. Trust and Mr. Pressly outlining the scope of Mr. Pressly's authority, only testimonial evidence was available to determine whether Mr. Pressly had actual authority. In its appellate brief, STI highlights the testimony of U.S. Trust Chief Executive Officer Callaway as the strongest affirmative evidence from which the jury could infer actual authority. When asked, "was Mr. Pressly authorized to go to New York to negotiate the deal?", Callaway responded, "He was authorized to go to New York to negotiate a deal, yes."

Mr. Pressly told STI at the beginning of the January 25, 1999 meeting, "U.S. Trust is standing by, is fully briefed, and is prepared to sign a definitive purchase and sale contract today if we can negotiate one." At the end of the meeting, Mr. Pressly said, "This is not what we had hoped for and I can't say we're happy with it, but we'll take it." STI also notes that Mr. Pressly stated at one point during the negotiations, "I am authorized to make this offer." In addition, Mr. Pressly admitted on cross-examination that at the New York meeting, he did not state that he was not authorized to bind U.S. Trust.

U.S. Trust directs our attention to the following evidence in the record as supporting its contention that Mr. Pressly did not have actual authority. First, it is undisputed that no one from STI had any communication with U.S. Trust concerning that scope of Mr. Pressly's authority other than with Mr. Pressly himself. Second, U.S. Trust Senior Vice President Cavanaugh testified that Mr. Pressly was authorized "to negotiate a possible deal," but his authority was limited. Specifically, Mr. Pressly "was not authorized to actually execute a contract." U.S. Trust CEO Callaway testified to the specific instructions he gave Mr. Pressly: he was

> to go out and try to find a buyer for the Sarkes Tarzian stock and he was given the authority to negotiate terms, price, and that sort of thing, with the people that he actually found, if any, and was specifically instructed, and there was no argument at all, that he would come back to us with those terms, and present them to us for review, analysis, and a final decision as to whether they were something that we should move forward with.

Further, Mr. Callaway testified that Mr. Pressly "had a fairly wide authority to go out and basically negotiate on terms, and anything else that needed to be considered,

but with the definite caveat that whatever he had negotiated came back to us for final determination." It is also undisputed that Mr. Pressly only communicated with U.S. Trust on one occasion about the negotiations. Mr. Pressly communicated with U.S. Trust after the negotiation session concluded. In particular, Mr. Pressly called U.S. Trust CEO Callaway, who was standing by all day long, and stated that there would not be an agreement signed that day. Furthermore, Mr. Pressly told Mr. Callaway that he was released from standing by.

In addition, U.S. Trust argues that the signature blocks on the unsigned written agreements STI prepared after the negotiation meeting were for U.S. Trust's signature, not that of Mr. Pressly. This assertion is consistent with the other record evidence indicating that only U.S. Trust signed agreements on behalf of the Mary Tarzian estate.

U.S. Trust wanted Mr. Pressly to testify concerning the scope of his authority to corroborate Mr. Callaway's testimony. However, the district court prohibited Mr. Pressly from testifying on this issue and U.S. Trust challenges this evidentiary decision on appeal. We review a district court's decision to exclude evidence for abuse of discretion. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1042 (7th Cir. 2000); *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1082 (7th Cir. 1998).

Apparently concerned about gamesmanship, the district court did not permit Mr. Pressly to testify as to whether he had actual authority to bind his principal in a contract with STI. The district court made this ruling because Mr. Pressly refused to answer STI's question on this point in his deposition. Mr. Pressly claimed attorney-client privilege. The day after Mr. Pressly's deposition, U.S. Trust implicitly waived its attorney-client privilege when Ms. Cavanaugh responded fully to the same questions STI asked Mr. Pressly the day before. The court regarded Mr.

Pressly's desire to change his position taken at his deposition as "not playing right."

Even if the district court did abuse its discretion by excluding the testimony, we are not convinced that this alleged error warranted a new trial. *See Old Republic*, 144 F.3d at 1082 (interpreting Federal Rule of Civil Procedure 61 as permitting a new trial only "when a significant chance exists that [evidentiary errors] affected the outcome of the trial."). Mr. Pressly's putative testimony was already in evidence through the testimony of Mr. Callaway and Ms. Cavanaugh. U.S. Trust has not demonstrated how the admission of Mr. Pressly's cumulative testimony would have changed the outcome of the trial. *See Mason*, 233 F.3d at 1047-48 ("It is unlikely that excluding such cumulative evidence would have caused the jury to find differently," citing *Palmquist v. Selvik*, 111 F.3d 1332, 1341 (7th Cir. 1997)).[7]

In any case, whether it was reversible error for the district court to deny Mr. Pressly's testimony on the scope of his authority does not matter here. This is because our review of the record demonstrates that there was no evidence presented at trial showing that Mr. Pressly had actual authority to bind U.S. Trust in a contract. Mr. Callaway and Ms. Cavanaugh's testimony—that they allowed Mr. Pressly to negotiate a deal but not to enter into it without first consulting with U.S. Trust and getting its approval—stood unrebutted. In other words, STI did not

---

[7] As for STI's statement during its closing argument that there was no corroboration for Mr. Callaway's testimony, U.S. Trust quotes a footnote in *United States v. Swanquist*, 161 F.3d 1064, 1074 n.2 (7th Cir. 1998) to argue that it was improper. However, in *Swanquist* we ultimately held it was not reversible error for the trial court to allow admittedly improper statements about the significance of absent rebuttal testimony. Therefore, *Swanquist* does not help U.S. Trust on this matter.

discharge its burden of showing that Mr. Pressly had actual authority. *See Gucciardo v. Norman*, 527 N.Y.S.2d 62, 64 (N.Y. App. Div. 1988); *Slavin*, 470 N.Y.S.2d at 39-40 ("A party who relies on the authority of an attorney to compromise an action in his client's absence deals with such an attorney at his own peril, and if the settlement is thereafter challenged, he has the burden of establishing that the attorney's actions were, in fact, authorized."). Nor did STI discharge its duty under New York law to ascertain the scope of Mr. Pressly's authority. *See Ford*, 299 N.E.2d at 664 ("One who deals with an agent . . . must make the necessary effort to discover the actual scope of authority."). As U.S. Trust argues, Mr. Pressly told the STI representatives at the negotiation meeting that U.S. Trust was "standing by" all day "to sign" an agreement, if the parties could reach one. STI did not reach out to or call U.S. Trust's principals. Doing nothing cannot be construed as making "the necessary effort to discover the actual scope of [the agent's] authority." *Id.*

STI cites *Carter v. Chicago Police Officers*, 165 F.3d 1071 (7th Cir. 1998) for support. In that case, we maintained that "Given the inconsistencies among the evidence and testimony presented to the jury, it was certainly within the province of the jury 'to parse the facts, to weigh the credibility of each witness and to disregard the testimony' of witnesses it found to be less credible or not worthy of credence." *Id.* at 1081 (internal citations omitted). In other words, STI suggests that the jury could have disbelieved Mr. Callaway and Ms. Cavanaugh and set aside their testimony. However, *Carter*, as the text quoted above indicates, involved a situation in which the parties had two distinct and inconsistent stories about the events that triggered the lawsuit. Here, even viewed in the light most favorable to STI, the evidence STI points to is not inconsistent with Mr. Callaway and Ms. Cavanaugh's testimony about the scope of Mr. Pressly's authority,

namely that Mr. Pressly was authorized to negotiate a deal but not to sign a contract or otherwise bind U.S. Trust without consulting it first.

On these facts, *Carter* is not helpful to STI. However, *United States v. 2.4 Acres of Land, More or Less, in Lake County, Ill.*, 138 F.2d 295, 297 (7th Cir. 1943) is instructive. *2.4 Acres* holds that, "neither has the jury the right arbitrarily to ignore or discredit the testimony of unimpeached witnesses so far as they testify to facts." *Id.*

With no showing of actual authority, we turn to the question of whether there was evidence demonstrating Mr. Pressly had apparent authority to bind U.S. Trust under New York law.

### B. Apparent Authority

The district court refused to instruct the jury on apparent authority, because it concluded that there were insufficient facts to support the claim under New York law. STI appeals this ruling. Our review of a district court's rejection of a proposed jury instruction is limited. We first ascertain whether the instructions as a whole were sufficient to apprise the jury correctly of the applicable law and, if not, whether the instructions so misguided the jury that a litigant is prejudiced, warranting reversal. *Maltby v. Winston*, 36 F.3d 548, 560 (7th Cir. 1994).

We agree with the district court's decision not to submit an apparent authority instruction to the jury. We recall that under New York law, apparent authority is created by "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock*, 474 N.E.2d at 1181. As we stated above, New York explicitly rejects the idea that an agent can confer apparent authority on him or herself. *Id.* "Rather, the existence of 'apparent authority' depends upon a factual showing that

the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent." *Id.* (quoting *Ford,* 299 N.E.2d at 664 and Restatement (Second) of Agency § 27 (1958)). *See also Nash*, 616 N.Y.S.2d at 403; *Melstein v. Schmid Labs., Inc.*, 497 N.Y.S.2d 482, 483 (N.Y. App. Div. 1986). The district court was correct in concluding that STI did not produce any evidence demonstrating that STI had any direct interaction with U.S. Trust principals before or during the negotiations for the sale of the shares. Nor did STI observe any actions by U.S. Trust that would indicate that U.S. Trust had cloaked Mr. Pressly in apparent authority. We conclude, therefore, the district court committed no error by refusing to instruct the jury on apparent authority.

STI seeks to shore up support for its apparent authority claim by citing the Restatement (Second) of Agency and a number of cases. However, these citations provide no traction for STI. STI points to two sections of the Restatement (Second) of Agency. First, STI contends that section 8, comment (b) aids its case. That comment provides that "The manifestation of the principal may be made directly to a third person, or may be made to the community, by signs, by advertising, by authorizing the agent to state that he is authorized, or by continuously employing the agent."

In addition, STI cites section 27, comment (a) of the Restatement (Second) of Agency. This provision states that apparent authority may arise "from authorized statements of the agent" that come to the third party if the principal is responsible for the information. Specifically, STI notes Mr. Pressly's statements "I am authorized to make this offer" and "we'll take it" as sufficient to cloak Mr. Pressly with apparent authority. STI also cites *National Labor Relations Board v. G & T Terminal Packaging Co., Inc.*, 246 F.3d 103, 115 (2d Cir. 2001) to support its contention that apparent authority arose from Mr. Pressly's

statements. However, we find that *G & T Terminal* does not apply in this situation. In *G & T Terminal*, the court found there was substantial evidence to support the Administrative Law Judge's conclusion that the attorney had apparent authority to bind the client. In *G & T Terminal*, the client company's president had attended an earlier negotiating session at which time he agreed to all of the contract terms except an arbitration clause. The attorney stated at the meeting, "she was there to enter into an agreement." *Id.* By contrast, in this case, U.S. Trust's CEO Callaway did not speak to Mr. Pressly the entire day. Nor was he was ever present at the negotiation meeting. In essence, there were no actions or words of CEO Callaway which STI could construe as cloaking Mr. Pressly with authority to bind U.S. Trust. Further, unlike the president in *G & T Terminal*, Mr. Callaway was unaware of any of the terms Mr. Pressly had discussed with STI. Finally, unlike the attorney in *G & T Terminal* who said she (as opposed to her client) was there to "enter into an agreement," Mr. Pressly made no such statement. Rather, Mr. Pressly stated only that he was there to *negotiate* an agreement which U.S. Trust, the principal, was standing by to sign.

In sum, we find STI's arguments on apparent authority unconvincing. The district court did not err by refusing to instruct the jury on this issue.

### III. Conclusion

We find that Mr. Pressly lacked authority to enter U.S. Trust in a binding stock sale and purchase agreement with STI as a matter of New York law and consequently conclude that no contract was ever created. The case should not have gone to the jury. As the existence of the contract is a threshold matter in this case, we need not analyze the parties' remaining arguments. The case is REVERSED and REMANDED with instructions to enter judgment for U.S. Trust.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*